**Daniel DANIELS, as next friend of Jessica Daniels and Jennifer Daniels, Plaintiffs,**

v.

**SCHOOL BOARD OF BREVARD COUNTY, FLORIDA, Defendant.**

No. 97–1186–CIV–ORL–22.

United States District Court, M.D. Florida, Orlando Division.

Dec. 23, 1997.

Lisa Kuhlman Tietig, Tietig & Tietig, Merritt Island, FL, for Daniel Daniels, as next friend of Jessica Daniels and Jennifer Daniels, plaintiffs.

Jeffrey Graham Slater, Eubanks, Hilyard, Rumbley, Meier & Lengauer, P.A., Orlando, FL, for School Board of Brevard County, Florida, defendants.

### ORDER AND PRELIMINARY INJUNCTION

CONWAY, District Judge.

### I.  INTRODUCTION

On November 25, 1997, the Court entered an Order (Dkt.28) determining that the De-

fendant, School Board of Brevard County, was violating Title IX[1] and the Florida Educational Equity Act[2] based on disparities between the girls' softball and boys' baseball programs at Merritt Island High School ("MIHS"). In the Order, the Court identified specific inequalities with respect to the following matters: electronic scoreboard, batting cage, bleachers, signs, bathroom facilities, concession stand/press box/announcer's booth, and field lighting. Before entering a preliminary injunction, the Court directed the School Board to submit a plan concerning how it proposed to remedy the deficiencies identified in the Order. The School Board has filed its plan; Plaintiffs have responded thereto.

## II. THE SCHOOL BOARD'S PLAN[3]

Preliminarily, the School Board notes that it has sent a directive to all secondary school principals, advising them that

effective immediately all principals, athletic directors, coaches and booster clubs are to be advised that district policy henceforth requires that each principal shall be responsible for insuring that regardless of the source of funding, whether it be school district, school, or booster club, the expenditures that support male and female athletic teams shall be on an equitable basis. Henceforth a principal may not accept or approve, either directly or indirectly, funding which fosters a disparate, inequitable status between male and female athletic teams.

Defendant's Response to Court Order of November 25, 1997, Requiring Plan to Remedy Court Determined Inequalities Between MIHS Baseball and Softball Facilities (Dkt.29) at 4.

However, the School Board proposes not to spend any funds to remedy the inequities identified in the prior Order. In that regard, the School Board states:

[T]he plan here being submitted by the School Board does not involve the expenditure of funds by the School Board of Brevard County or Merritt Island High School. The Defendant assumes that the Court understands and can fully appreciate the financial limitations and tight budgetary constraints under which the School Board is forced to operate. Any monies spent on athletics must obviously be taken from another area of operations which is already lacking in funds.

The School Board believes that the immediate expenditure of funds to eliminate the inequities the Court has determined exist between the boys' baseball program and the girls' softball program at Merritt Island High School would create more problems than it would solve. In reaching the decision not to expend funds to eliminate the inequities the Defendant is not unmindful of the fact that before the Court has even issued an injunction in this case the Daniels family has already filed a separate class action asking that the School Board be required to install new softball fields at three other Brevard County high schools which presently use off-campus fields for practice and games. That new suit also suggests that there are inequalities between the boys' facilities and girls' facilities used by students from Brevard County high schools other than Merritt Island High School and that they need to be remedied.

*Id.* at 8.

The School Board proposes the following remedial measures regarding the specific inequities identified in the prior Order:

**Electronic Scoreboard**

The School Board says it is not feasible to move the electronic scoreboard on the boys'

1. 20 U.S.C. § 1681.

2. Fla. Stat. § 228.2001.

3. The School Board objects to being required to submit a plan. However, as the Court expressly noted in the November 25, 1997 Order, this procedure has been recognized by other courts. *See Cohen v. Brown University*, 101 F.3d 155, 185–88 (1st Cir.1996), *cert. denied,* —— U.S. ——, 117 S.Ct. 1469, 137 L.Ed.2d 682 (1997).

baseball field back and forth between the baseball field and the girls' softball field. Accordingly, the Board proposes to disallow use of the scoreboard on the boys' field "until such time as the girls' field has a comparable scoreboard." *Id.* at 4.

**Batting Cage**

The School Board contends that the design and structure of the batting cage on the boys' field precludes moving it back and forth between the two fields. The Board proposes to co-locate the girls' and boys' separate pitching machines so that both teams can use the batting cage on alternate weeks.

**Bleachers**

The School Board maintains it is not feasible to relocate bleachers from the boys' field to the girls' field. Accordingly, "[u]ntil such time as funds may be raised for the purchase of additional bleachers or bleachers are donated so that the girls' field has bleachers essentially equal in number and quality to the boys' bleachers," the School Board proposes to rope off the boys' bleachers so that "the only area used during games shall be equivalent in size and seating number to those bleachers which presently exist on the girls' softball field." *Id.* at 5.

**Signs**

The School Board proposes altering the "Merritt Island Baseball" sign facing the student parking lot, to read "Merritt Island Baseball and Softball." Alternatively, the Board proposes to either eliminate all lettering or change the sign to "Merritt Island Athletics." The School Board also proposes to remove the donated "Home of the Mustangs" sign which faces the boys' baseball diamond, and to leave in place a second, gender neutral sign located outside the boys' field.

**Bathroom Facilities**

The School Board proposes to remove a portion of the fence separating the boys' and girls' fields, so as to permit equal access to the restrooms.

**Concession Stand/Press Box/Announcer's Booth**

The Board proposes to close down this building until such time as a comparable facility is constructed on the girls' field.

**Lighting**

The School Board has already approved the installation of lights on the MIHS girls' softball field. The Board anticipates the installation process will be complete by the beginning of the girls' season. If it is not, the Board proposes to disallow use of the lights on the boys' field until the lights on the girls' field are in place.

### III. PLAINTIFFS' RESPONSE TO THE PLAN

Plaintiffs' basic position is that the School Board should be required to remedy the inequities by spending the funds necessary to improve the MIHS girls' softball program, rather than denying the boys' baseball team facilities it already enjoys.[4] Plaintiffs commend the Board's new policy regarding booster club funding; however, they maintain that this policy will essentially freeze present inequities. Plaintiffs also assert that the School Board's "take it away from the boys" approach is actually designed to generate "backlash" against the girls' softball team. Further, Plaintiffs contend that the Board's plan is inadequate to remedy the perception of inequality because even if the boys are not allowed to use certain facilities—such as the electronic scoreboard, bleachers, lighting and concession stand/press box/announcer's booth—those facilities will remain in place as symbols of inequality. Accordingly, Plaintiffs urge the Court to require the School Board to either completely remove those facilities from the boys' field or

---

**4.** Additionally, regarding specific inequities, Plaintiffs contend that the batting cage should be moved to the girls' field "to balance past favoritism," that the "Merritt Island Baseball" sign should be changed to read "Merritt Island Softball and Baseball," not "Merritt Island Baseball and Softball," and that the other, gender neutral sign should be removed because leaving it where it is "would maintain an appearance of discrimination[.]" Plaintiffs do not object to School Board's plan regarding access to restroom facilities.

provide the girls with equal facilities on their field. Finally, Plaintiffs decry the School Board's claim of "tight budgetary constraints;" they maintain that the Board is slated to receive at least $43 million from the Florida Department of Education for capital improvements.[5]

## IV. ANALYSIS

■ In giving the School Board the opportunity to submit a plan, the Court had hoped for constructive input, such as a long-range fiscal plan to remedy the inequities identified in the Court's prior Order. Unfortunately, the Board's plan leaves much to be desired; it creates the impression that the Board is not as sensitive as it should be regarding the necessity of compliance with Title IX. The Court is inclined to agree with Plaintiffs that many of the Board's proposals seem more retaliatory than constructive. The Board's approach essentially imposes "separate disadvantage," punishing both the girls and the boys, rather than improving the girls' team to the level the boys' team has enjoyed for years. The Court is sensitive to the financial constraints imposed upon public educational institutions in this day and age; that is yet another reason the Court gave the Board an opportunity to submit a remedial plan, rather than simply entering an injunction decreeing the expenditure of funds by a date certain. However, the fact remains that Plaintiffs have presented substantial evidence that the School Board has violated, and continues to violate, an Act of Congress mandating gender equality in public education.

However, the inquiry does not end here. Before the School Board's response to the Court's November 25 Order was due, Plaintiffs altered the playing field dramatically by filing a separate suit seeking class action status and challenging the Board's treatment of girls' softball on a county-wide basis. *See*

*Daniel Daniels, as next friend of Jessica Daniels and Jennifer Daniels v. School Board of Brevard County, Florida,* Case No. 97–1463–CIV–ORL–22, filed December 4, 1997. In this second suit, Plaintiffs complain, *inter alia,* of the fact that three of the ten high schools in Brevard County have boys' baseball fields, but no girls' softball fields.[6] On the heels of this filing, a different group of parents and children commenced yet another action claiming gender equity violations with respect to girls' softball programs throughout the county. *See Dee Hartley, as parent and next friend of Natasha Harris, et al. v. School Board of Brevard County, Florida,* Case No. 97–1492–CIV–ORL–22, filed December 10, 1997. The complaint in this third suit also requests class action status.[7]

■ As a result of these latest two cases, the Title IX focus has expanded from the softball facilities at one high school to girls' softball programs throughout Brevard County. In the instant suit, two high school girls and a parent sought to force expenditures to improve one softball field. The two subsequent cases presumably seek to force, *inter alia,* the construction of softball fields at three other high schools. These developments dramatically alter the potential financial impact on the School Board.

At this juncture, the Court cannot make a reasoned determination concerning the amount of additional funds the School Board should be required to expend to remedy the inequities present at Plaintiffs' particular high school. The extent to which the Board must further appropriate funds to correct the situation at MIHS must be considered in the context of the two related cases which seek class action treatment and the expenditure of funds on a county-wide basis. Accordingly, with the exception of lighting on the MIHS girls' softball field, which the School Board

---

5. According to a newspaper article submitted by Plaintiffs, the School Board has not yet received these funds.

6. It is unclear how this second suit advances the interests of Jessica and Jennifer Daniels, particu-

larly since it was filed before the Court entered a preliminary injunction in the instant case.

7. All three cases were randomly assigned to the undersigned judge.

has already committed to install, for the moment, the Court will impose injunctive measures which do not require additional funding.

## V. PRELIMINARY INJUNCTION

Based on the foregoing, it is ORDERED as follows:

1. Before January 26, 1998, the School Board shall make the following changes at Merritt Island High School:

a. Remove a portion of the fence separating the boys' baseball field and girls' softball field, so that the restroom facilities are readily accessible to players and spectators at both fields.

b. Co-locate the girls' and boys' pitching machines so that both teams can use the batting cage, and establish a schedule allowing both teams equal use of the cage.

c. Change the "Merritt Island Baseball" sign facing the student parking lot, so that it reads "Merritt Island Baseball and Softball," and remove the donated "Home of the Mustangs" sign which faces the boys' baseball diamond.

d. Install lighting on the girls' softball field.

2. During the pendency of this action and the two related cases, the School Board is not required to deny the boys' baseball team and its spectators use of the electronic scoreboard, existing bleachers and the concession stand/press box/announcer's booth.[8] The Board is also not required to deny the boys' baseball team use of the lights on the baseball field, since the Board is required to install lighting on the girls' softball field by January 26, 1998. Finally, the Board is not required to remove the gender-neutral sign located outside the boys' baseball field.

---

8. Of course, this ruling assumes that the players and spectators of the girls' team are free to patronize the concession stand.